13 So.2d 182

**FAUCETT v. PROVIDENT MUT. LIFE INS. CO. OF PHILADELPHIA.**

6 Div. 993.

Supreme Court of Alabama.

March 11, 1943.

Rehearing Denied May 13, 1943.

F. R. Ingram and J. M. Breckenridge, both of Birmingham, for appellant.

Lange, Simpson, Brantley & Robinson and Oliver W. Brantley, all of Birmingham, for appellee.

BOULDIN, Justice.

Action under the homicide act to recover damages for death by wrongful act. Demurrers having been sustained to the several counts of the complaint as amended, plaintiff, because of such adverse rulings, took a nonsuit and appeals. Plaintiff's intestate is alleged to have come to her death from injuries received March 29, 1940, from the falling of overhead plaster in the hallway of the residence occupied by her at the time. The alleged negligence or wrongful acts of defendant proximately causing the fatal injury, so far as here to be reviewed, are presented in counts A, B, C, D, E, F of the complaint. These counts

were evidently intended to present the full case relied upon for recovery that the law of the case could be fully settled on demurrers to the complaint.

Counts A and C present the same theory of the case, count C being fuller and more complete in its averments.

Count C may be summarized thus: Defendant negligently leased a building described as an apartment house to Arthur and Roderick Cole as a residence under written lease made Exhibit A to each count of the complaint, knowing that the overhead plastering was defective and dangerous to human life or limb; that the husband of the intestate, by oral agreement, subleased a part of the building as a residence for himself and wife; that the defect in the plastering was latent, unknown to the tenant, sub-tenant, or plaintiff's intestate, and not discoverable by ordinary care.

The lease contained the following covenant on the part of the lessee: "not to assign this lease, nor underlease, nor let said premises or any part or interest therein without the written consent of the Lessor hereon endorsed."

No such written consent is averred. By way of avoidance of non-compliance with the above stipulation, it is averred: "The plaintiff further alleges that said written lease attached hereto and made a part hereof was prepared by the defendant its servant, agent or employees while acting within the line and scope of his or their employment as such, that the provisions concerning sub-leasing said premises were written in very small type and none of the terms of said lease were called to the attention of, or read to, said Arthur Cole or Roderick Cole, that they had no actual knowledge of the terms or conditions of said lease and did not read the same, that said lease was not of record in the Probate Office of Jefferson County, Alabama, that Plaintiff's intestate had no knowledge of the said written lease or the terms thereof, that plaintiff's intestate at no time had knowledge of the terms, and was not a party to said oral agreement between her husband, Ed Yarworth, and Arthur Cole and Roderick Cole; that Defendant, its agent, servant or employees while acting within the line and scope of his or their authority as such, was informed at the time of the execution of said written lease by Arthur Cole that he would probably sub-rent a part of said premises; to which said defendant or its agent, servant or employees, while so acting, never objected; that the Defendant, its agent, servant or employees while acting within the line and scope of his or their authority was informed that said Ed Yarworth and Plaintiff's intestate were living on said premises in to-wit: The month of November, 1939, and had knowledge from to-wit: The month of November, 1939, to the date of the falling of said plaster, that said Ed. Yarworth was occupying said premises under an agreement with Arthur Cole and Roderick Cole and did accept rents on said premises from to-wit: The month of November, 1939, until to-wit: The First day of April, 1940, from Arthur Cole and Roderick Cole knowing that Ed Yarworth contributed to the monies which were paid to the defendant as rents on said premises during said time."

The lease expressly declared no obligation on the lessor to repair and negatived any warranty of the fitness of the property for the use for which it was leased, or liability for damage from defects in the premises. The monthly rental was $17.50.

For breach of any of the covenants or conditions in the lease, the lessor retained the right to declare a forfeiture, at his option, etc.

Notwithstanding the lessee takes the property as it is, with no duty on the lessor to repair, the lessor is under duty to give notice of latent defects, known to him to be dangerous to occupants, and which were not reasonably discoverable by the lessee. Leasing the property, putting the lessee in a position of concealed peril, without giving notice thereof, is a breach of duty, negligence which will render the lessor liable for personal injuries or death resulting from such defects. This liability extends to the lessee and those occupying the premises in his right. This includes a sub-tenant and his family, if the lessee is authorized to let to a sub-tenant. The sub-tenant, in such case, acquires an estate with the same incidents with regard to the safety of the premises, as tenant in chief. Lacey v. Deaton, 228 Ala. 368, 153 So. 650; Smith v. Hallock, 210 Ala. 529, 98 So. 781; Scoggins v. Atlantic & Gulf Portland Cement Co., 179 Ala. 213, 223, 60 So. 175; Anderson v. Robinson, 182 Ala. 615, 62 So. 512, 47 L.R.A.,N.S., 330, Ann.Cas. 1915D, 829; Morgan v. Sheppard, 156 Ala. 403, 47 So. 147; Adler v. Miller, 218 Ala. 674, 120 So. 153; Gulf Electric Co. v. Fried, 218 Ala. 684, 691, 119 So. 685; 32 Am.Jur. 544, 545.

■ Under the plenary power to make contracts, not violative of law, the lessor and lessee may stipulate there shall be no subletting of the property nor any portion of same without advance consent of the lessor evidenced by written endorsement on the lease. This is said to be restrictive of the estate which would otherwise pass to the lessee. Annotation 117 Am.St.Rep. 92 et seq.; 32 Am.Jur. 333; Maddox v. Wescott, 156 Ala. 492, 47 So. 170, 16 Ann. Cas. 604.

■ But the right to sub-let with the consent of the lessor being an incident to the estate of the lessee, such consent can be given after the sub-letting, and the stipulation for advance consent endorsed on the lease, being for the benefit of the lessor, can be waived, and is waived by words or acts clearly evidencing consent. Maddox v. Wescott, supra; 32 Am.Jur. 336 et seq.

■ While count C criticises, perhaps with good cause, the mechanics of the lease—small print of the covenants, conditions, etc.—the complaint, and the argument here, proceed on the theory of a valid lease evidenced by the instrument, passing to the lessee the right of immunity from hidden dangerous conditions, known to the lessor, not disclosed to the lessee, nor discoverable by the lessee or his sublessee. The right of plaintiff's intestate to be in the alleged place of peril is rested on the right of a sub-tenant, which right could only arise by a waiver of the terms of the lease, since the sub-tenant is charged with notice of terms of the lease. Brock v. Desmond & Co., 154 Ala. 634, 45 So. 665, 129 Am.St.Rep. 71; 117 Am.St.Rep. 100.

Thus the issue of law is reduced to the inquiry: Does count C disclose consent of the lessor to the sub-letting of part of the premises as matter of law?

■ Two quite well settled rules of pleading are involved. Where the facts alleged disclose a waiver as matter of law, there is no need to aver in terms the fact of waiver, which follows as matter of law. This rule is illustrated in City Garage & Sales Co. v. Ballenger, 214 Ala. 516, 108 So. 257, 258, dealing with consent to an assignment to a lease, wherein it was said:

"If the lessor, knowing of the assignment, accepts the assignee as substituted lessee by receiving the rents without objection, this is sufficient evidence of consent."

"But the rule is that it is not sufficient to plead the existence of facts which prima facie or presumptively establish the ultimate fact; but that the ultimate fact should be alleged in the pleading, and then it may be proven by showing the existence of that which prima facie proves it, thereby casting the duty on the other party to overcome such presumption. West v. Spratling, 204 Ala. 478(3), 86 So. 32; Neighbors v. Lauderdale, 206 Ala. 595(2), 91 So. 478. Though it is said to be sufficient if the ultimate fact is necessarily implied from the averments as made. 49 Corpus Juris, 39." Sims v. Tigrett, 229 Ala. 486, 489, 158 So. 326, 328; Alabama Baptist Hospital Board v. Carter, 226 Ala. 109, 145 So. 443.

■ Considering count C, there is no averment of waiver in terms. That the lessee advised the lessor at the time of taking the lease of an intention to sublease, followed by acceptance of the written lease in triplicate, an original of which was presumably in his hands, was no more than information that consent to sub-lease would be requested as per terms of the lease. The further averments, in effect, disclose silence with knowledge of a sub-lease and payments of rents to the lessee, and knowledge that the lessee was using monies contributed by the sub-tenant in payment of the lessee's rent to the lessor.

If the question of waiver turned on silence, without more, and a waiver requires a positive consent in the mind of the lessor, the second rule of pleading above quoted would seem to apply. But can it be said that count C, which must be considered as a whole, discloses no more than silence, in dealing with the question of waiver as matter of law?

The count alleges negligence of the lessor in leasing to the lessee for residence purposes, premises with a concealed defect, dangerous to life or limb, known to the lessor, not disclosed to the lessee, nor reasonably discoverable by him or his sub-tenant; that a part of the premises was sub-let to the husband of plaintiff's intestate, who, with his wife, entered as a sub-tenant, and occupied the same some four months; that this was known to the lessor, who also knew the sub-tenant and family were continually exposed to a hidden danger, and knew as matter of law that such occupancy was subject to de-

fendant's consent or dissent. If all these averments be true, the burden of proof being on plaintiff, we are of opinion and hold there was a legal duty to the subtenant and his family to speak out, to make known his dissent to their occupancy, or else disclose the concealed danger to which they were exposed.

The action is in tort, based on alleged breach of duty toward plaintiff's intestate proximately resulting in her death. The fundamental question is: Was there such breach of duty?

The question of waiver of the restriction on sub-letting by silence cannot be disassociated from the fact of knowledge of sub-letting and occupancy of premises known by the lessor to subject the occupant to concealed danger, not discoverable by ordinary care, the care exercised by persons of common prudence under like conditions.

 It is said on high authority that such restrictions are not looked upon with favor by the courts; they are construed with utmost jealousy, and easy methods have always been countenanced for defeating them. 32 Am.Jur. 333; Annotation 117 Am.St.Rep. 93.

We would not give such construction application under all conditions. There may be strong reasons for such restrictions in the particular case.

But such rule may be well applied to cases wherein, under all the analogies of the law, such restrictions are relied upon to acquit the lessor of a breach of legal duty. We conclude that silence and acquiescence under the facts averred in count C, if proven, must be held a waiver of the restriction in the lease. 32 Am.Jur. 542, 543, 544, 545. The demurrer to count C should have been overruled.

Counts B and D are based on negligence of defendant in making repairs on the premises pending the occupancy by plaintiff's intestate. It is alleged defendant or its authorized agents "did negligently repair the overhead plastering in the hallway of the second floor of said premises so that said plastering was, on to-wit: The 29th day of March, 1940, unsecure and unsafe and dangerous to the life or limb of persons using said hallway and as a proximate consequence thereof on said date said plastering fell" inflicting the injury causing death, etc.

Count B makes the written lease from lessor to lessee a part thereof, and fails to aver facts disclosing any right of the intestate to be in the place of peril.

Count D does contain like averments as count C above quoted, and now held to disclose a waiver of the restrictions as to subletting.

It is the law that where the lessor, under no duty to repair, voluntarily undertakes so to do, he is liable for injuries proximately caused by negligence in so making repairs as to render the premises dangerous to life or limb of those rightfully occupying the premises. Bains v. Dank, 199 Ala. 250, 74 So. 341; Cairnes v. Hillman Drug Co., 214 Ala. 545, 108 So. 362; Green v. Jefferson County Bldg. & Loan Ass'n, 241 Ala. 549, 3 So.2d 415; 32 Am.Jur. 548, 549, 550.

Count D was not subject to the demurrer.

Counts E and F are based on the maintenance of an alleged private nuisance. These counts allege the dangerous condition of the premises was known to the defendant, but was concealed, not known to nor reasonably discoverable by the lessee, sub-tenant or plaintiff's intestate, and embody all the averments of count C disclosing the right of plaintiff's intestate to protection against injury. They bring the case within the law declared in Morgan v. Sheppard, supra; Prudential Ins. Co. of America v. Zeidler, 233 Ala. 328, 329, 171 So. 634. Counts E and F were not subject to demurrer.

Reversed and remanded.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.