Juanita Johnson appeals from a summary judgment entered in favor of the defendants, James Passmore and Nancy Passmore, in a negligence action. The only question presented is whether Johnson presented substantial evidence tending to show that the Passmores breached a duty owed to Johnson and thereby caused her injury.
On November 1, 1987, Johnson was visiting her daughter and son-in-law at the house they were renting from the Passmores. As Johnson prepared to leave the house and descend a flight of seven stairs that led from the front porch to the ground, her granddaughter ran up the stairs and bumped into her. Johnson lost her balance and, because there was no handrail on the stairs, fell from the top stair to the ground, a distance of approximately five feet. In February 1989 Johnson filed a complaint against the Passmores, alleging that they had undertaken a duty to repair the house and had performed that duty negligently. She also alleged, in the alternative, that the Passmores had negligently removed the handrail and failed to warn her of the dangerous condition created by its removal.
The Passmores moved for a summary judgment. Attached to their motion was James Passmore's affidavit, in which he stated that there was a railing on the stairs when he leased the house to Johnson's son-in-law; that he had an oral lease agreement with Johnson's son-in-law, who had been an employee of the Passmores, wherein the son-in-law agreed to make repairs on the house, initially in lieu of rent; that the Passmores never agreed to repair the house; and that the son-in-law took the handrail down and had refused to replace it, despite the Passmores' requests.
In response to that motion, Johnson submitted a brief that contained references to James Passmore's deposition. She alleged that the Passmores had assumed a duty to repair the house by accepting her son-in-law's services in lieu of rent; by asking him to replace the handrail; and by supplying materials for his use in repairing the house. She also argued that by renting the house to her son-in-law while he was in their employ, and allowing him to exchange his services in repairing the house for his first few months' rent, the Passmores had, in effect, ordered their agent to repair the house and that they were vicariously liable for his negligent repair, under the doctrine of respondeat superior. The trial court granted the Passmores' motion. Johnson appeals from the summary judgment, raising the same arguments that she presented at trial.
As a general rule, a landlord is not liable in tort for injuries to his tenants that are caused by a defect in the leased premises, unless the injury-causing defect existed at the time of the letting, was known to the landlord, and was concealed from the tenant. Murphy v. Hendrix, 500 So.2d 8 (Ala. 1986); Cohran v. Boothby Realty Co., 379 So.2d 561 (Ala. 1980);Uhlig v. Moore, 265 Ala. 646, 93 So.2d 490 (1957). A tenant's guests enter the leased premises under the tenant's title, and thus have no *Page 832 
better right against the landlord than does the tenant.Sanders v. Vincent, 367 So.2d 943 (Ala. 1978); Uhlig.
In the instant case, it is undisputed that the tenant, Johnson's son-in-law, removed the handrail without the Passmores' authorization or prior knowledge and that he had refused to reinstall it despite James Passmore's request that he do so. Because he created the hazardous condition and refused to repair it, Johnson's son-in-law would not have had a right of action against the Passmores if he had been injured because of the absence of the handrail. That defect did not exist at the time of the letting, and it clearly was not concealed from the tenant. Cohran, supra; Uhlig, supra.
Therefore, pursuant to the rule governing the rights of a tenant's guests, as set out in Sanders, supra, and Uhlig,supra, Johnson would also be precluded from recovery and the Passmores would be entitled to a judgment as a matter of law.
Johnson seeks to avoid the operation of this rule, arguing first that, by accepting repair work from her son-in-law in lieu of rent and by supplying some of the materials he needed to do those repairs, the Passmores assumed a duty to repair the house. However, as a general rule, covenants to repair will not be implied, Prudential Ins. Co. of America v. Zeidler, 233 Ala. 328,171 So. 634 (1936), and the burden is on the tenant alleging the existence of such a covenant to prove its existence. Dunson v. Friedlander Realty, 369 So.2d 792 (Ala. 1979). James Passmore, in his deposition and his affidavit, denied that he had performed, or had volunteered to perform, any repair work on the house while Johnson's son-in-law was his tenant. Johnson has offered no evidence to refute Passmore's claims. The agreement by Johnson's son-in-law to make repairs served as consideration for the lease; it did not make the Passmores responsible for performing repairs, and it did not make Johnson's son-in-law the Passmores' agent in performing repairs. When a party opposing a motion for summary judgment fails to offer an affidavit or other evidence that contradicts the evidence presented by the moving party, the trial court must consider that evidence as uncontradicted. Golden Gulf,Inc. v. AmSouth Bank, N.A., 565 So.2d 114 (Ala. 1990); Eason v.Middleton, 398 So.2d 245 (Ala. 1981). Because Johnson did not offer evidence that contradicted Passmore's testimony, the summary judgment was proper as to that issue.
Johnson also argues that the Passmores are vicariously liable for her son-in-law's removal of the handrail, under the theory of respondeat superior. She argues that because her son-in-law had once been employed by the Passmores; because they accepted repair work in lieu of rent for five months; and because they allowed her son-in-law to get repair supplies from their office, her son-in-law was the Passmore's agent and they are liable for his negligent removal of the handrail.
In response, the Passmores point out that Johnson's son-in-law was no longer in their employ at the time of Johnson's accident. That fact is undisputed. They also argue that their lease agreement with Johnson's son-in-law was a contractual relationship that was separate and apart from their earlier relationship with him as employers and employee. We agree. It is clear that Johnson's son-in-law was acting in his individual capacity, not as the Passmores' employee, when he rented the house as a residence for his family and when he removed the handrail. In the absence of proof that a master-servant relationship existed in respect to the transaction out of which the plaintiff's injury arose, the doctrine of respondeat superior has no application. Jessup v.Shaddix, 275 Ala. 281, 154 So.2d 39 (1963).
For the reasons stated above, there were no genuine issues of material fact for a jury to resolve, and the Passmores were entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. The judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur. *Page 833