Chesley Lee Collier broke his leg at approximately 11:30 p.m. on February 26, 1983, after tripping over an orange electrical cord used to supply electricity to two display signs at the Clearview Lounge, operated by Daniel Wainwright in Prattville, Alabama. The cord was plugged into an outlet located in the exterior wall of the building and was draped inches above an adjacent sidewalk. Collier was on the premises as a member of a band hired to play at the lounge.
The premises were owned by Eunice Duprel, who had leased them to Wainwright on July 1, 1981. They had previously been leased to Montgomery Lincoln-Mercury, Inc. Wainwright owned a portable display sign, which he used for advertising. It was placed next to a permanent sign which, at one time, was supplied with electricity through an underground electrical cable. However, during Montgomery Lincoln-Mercury and Wainwright's leases, the extension cord came to be used as the method of supplying electricity to the signs.
Collier filed suit against Wainwright in the Circuit Court of Autauga County and, by an amendment to his complaint, later added Duprel and Montgomery Lincoln-Mercury. He alleged that he was a business invitee on the premises and that Duprel negligently or wantonly caused or allowed a dangerous condition to exist there and failed to warn him of that condition. He also alleged that Montgomery Lincoln-Mercury originally utilized the aboveground cord to supply electricity to the permanent sign. Collier appeals from summary judgments granted in favor of Duprel and Montgomery Lincoln-Mercury.[1] We affirm.
In Sanders v. Vincent, 367 So.2d 943, 944 (Ala. 1979), the Court stated the rule in Alabama:
 "`[A]s to the tenant, his servant, guest or others entering under his title, in the absence of a covenant to repair, . . . the landlord is only liable for injuries resulting from latent defects, known to him at the time of the leasing, and which he concealed from the tenant.' Southern Apartments, Inc. v. Emmett, 269 Ala. 584, 114 So.2d 453 (1959).
 "See also Osborn v. Brown, 361 So.2d 82 (Ala. 1978); Chambers v. Buettner, 295 Ala. 8, 321 So.2d 650
(1975); Uhlig v. Moore, 265 Ala. 646, 93 So.2d 490
(1957)."
Eunice Duprel's affidavit, which was attached to her motion for summary judgment, reads, in pertinent part, as follows:
 "My name is Eunice Martin Duprel. I am one of the named Defendants in that certain civil action pending in the Circuit Court of Autauga County, Alabama, more particularly known as Case Number CV-83-073. During all times pertinent to the allegations set forth in the Complaint and Amended Complaint filed *Page 1198 
therein, I was the owner and lessor of the premises where the Plaintiff's alleged injuries were incurred. The Defendant William Daniel Wainwright was my only tenant during such period, and I had no covenant to repair with him at any time during said period.
 "Prior to the time I was made a Party to said action, I never had even met the Plaintiff Chesley Lee Collier. Moreover, I have never had any business dealings with the Plaintiff Chesley Lee Collier, and no one has ever done so on my behalf either. The Plaintiff Chesley Lee Collier was not my employee, servant, invitee, guest, licensee or trespasser on the date he was allegedly injured.
 "I did not even know of the existence of the extension cord, which is the subject of said action, until I was made a Party to said lawsuit. I had no agreement with the Defendant William Daniel Wainwright to inspect or to repair, during said period, that part of the subject premises where said extension cord was located, and I undertook nor performed no such inspection nor repairs during said period.
 "Inasmuch as I did not, and still do not, even know whether said extension cord existed at the time the Plaintiff allegedly incurred his injuries, then I certainly did not conceal the existence of said extension cord from the Defendant William Daniel Wainwright at the time he leased the subject premises from me. As a matter of fact, after I was made a Party to said action, I viewed the subject extension cord for the first time and found that it was bright orange in color and that it was easily noticeable to any person who entered the subject premises."
Collier's answer in response to the motions for summary judgment, reads, in pertinent part, as follows:
 "Mrs. Duprel maintains that she was an absent landlord and had no control over the property. She was unaware of the electrical extension cord and was not involved in maintenance or repair of the premises at 1059 South Memorial Drive, Prattville, Alabama. However, in her deposition, a portion [of] which is attached hereto as Exhibit `A' and made a part hereof [omitted from this opinion], Mrs. Duprel testifies that she inspected this property after Montgomery Lincoln-Mercury vacated the premises in approximately April, 1981. She also testifies that she did perform some maintenance on the property at that time.
 "Mrs. Duprel states there was not an electrical power cord at the premises at the time she leased the property to William Daniel Wainwright. William Daniel Wainwright testifies in his deposition, a portion [of] which is attached hereto and marked Exhibit `B' and made a part hereof [omitted from this opinion], that when he took over the premises from Montgomery Lincoln-Mercury, that the extension cord was already present, in fact already lying on the parking lot, but was not plugged in. He had the power turned on and had the power cord plugged in for the operation of his business.
 "There is a conflict in the testimony and question of fact as to whether Mrs. Duprel knew the existence of the power cord and inspected the premises.
 "In any event, Mrs. Duprel would not be permitted to absolve herself of negligently providing a system of electrical power to the permanent display sign which by its very nature is a trap for business invitees.
 "According to William Daniel Wainwright's testimony, the said electrical cord was established or provided by Montgomery Lincoln-Mercury and . . . he merely adopted the system provided him by Montgomery Lincoln-Mercury. The establishment of the system of providing electrical power for the advertising displays places upon Montgomery Lincoln-Mercury a duty to do so in a reasonable manner which would not be expected to injure a business invitee. It is readily foreseeable that someone using this walkway at night, as is our case, may *Page 1199 
trip over an electrical wire hanging a few inches above the walkway."
Our review of Eunice Duprel's deposition, as referenced in Collier's answer, does not indicate that she "inspected" the premises after Montgomery Lincoln-Mercury vacated. Although it was undisputed that there was no covenant to repair, she did do some general clean up and maintenance work, including painting and replacing broken window panes. However, she did not examine the premises with Wainwright prior to his occupation of it.
Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56 (e), A.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party. Fountain v. Phillips,404 So.2d 614 (Ala. 1981).
Collier contends that a question of fact for the jury exists as to whether Eunice Duprel knew of the existence of the electrical cord when she cleaned up after Montgomery Lincoln-Mercury vacated. Assuming that she did, summary judgment was proper in this case because such knowledge is not material. The alleged defect was not a "latent" one. A latent defect is defined as "[a] hidden or concealed defect," "[o]ne which could not be discovered by reasonable and customary inspection." Black's Law Dictionary (5th ed. 1979). It is undisputed, as Collier states in his answer, that when Wainwright took possession of the premises, he observed the cord lying on the ground unplugged. Wainwright testified further on deposition that he, or one of his employees, plugged it in. Therefore, the manner in which the electricity was supplied to the signs could not have been concealed from him by Eunice Duprel.
Summary judgment was also properly granted in favor of Montgomery Lincoln-Mercury. It was undisputed that Collier was injured on February 26, 1983, and that Wainwright had leased the premises on July 1, 1981. On the date of his injury, Collier was the business invitee of Wainwright. Montgomery Lincoln-Mercury owed no duty to Collier merely because, during the time of its lease, it may have used the cord to supply electricity to a sign in a similar manner.
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and HOUSTON, JJ., concur.
[1] The judgments were certified final pursuant to Rule 54 (b), A.R.Civ.P.